**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**TOCCARA PULLER,**

      Plaintiff,

v.                                 Civil Action No. **3:25CV544**

**CPL COLES,** *et al.,*

      Defendants.

### MEMORANDUM OPINION

Toccara Puller, a former Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1]  The matter is before the Court for evaluation of Puller's Second Particularized Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.  The action will be DISMISSED because it is legally and factually frivolous.

### I.    PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A.  The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless."  *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992)

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

(quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), and state a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). For a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient

to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (first citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002), then *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.    PROCEDURAL HISTORY AND ALLEGATIONS

By Memorandum Order entered on January 23, 2026, the Court directed Puller to file a particularized complaint. (ECF No. 19.) On April 2, 2026, Puller filed a Particularized Complaint. (ECF No. 25.) However, Puller then requested permission to file a second particularized complaint, which the Court granted by Memorandum Order entered on May 1, 2026. (ECF No. 30.) The Court instructed Puller that the second particularized complaint must comply with the following directions that were provided to her in the January 23, 2026 Memorandum Order:

> In order to state a viable claim under 42 U.S.C. § 1983,[2] a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). Courts must liberally construe *pro se* civil rights

---

[2] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

complaints in order to address constitutional deprivations. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). In her current Complaint, Plaintiff does not identify the particular constitutional right that was violated by the defendants' conduct. Plaintiff's current terse allegations also fail to provide each defendant with fair notice of the facts and legal basis upon which his or her liability rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiff's Complaint also fails to comply with Federal Rule of Civil Procedure Rule 8.[3]

Accordingly, Plaintiff is DIRECTED, within [thirty (30)] days[] of the date of entry hereof, to particularize her complaint in conformance with the following directions and in the order set forth below:

    a.    At the very top of the particularized pleading, Plaintiff is directed to place the following caption in all capital letters "[SECOND] PARTICULARIZED COMPLAINT FOR CIVIL ACTION NUMBER 3:25CV544."

    b.    The first paragraph of the particularized pleading must contain a list of defendants. Thereafter, in the body of the particularized complaint, Plaintiff must set forth legibly, in separately numbered paragraphs, a short statement of the facts giving rise to his claims for relief. Thereafter, in separately captioned sections, Plaintiff must clearly identify each civil right violated. Under each section, the Plaintiff must list each defendant purportedly liable under that legal theory and explain why he believes each defendant is liable to her. Such explanation should reference the specific numbered factual paragraphs in the body of the particularized complaint that support that assertion. Plaintiff shall also include a prayer for relief.

    c.    The particularized pleading will supplant the prior complaints. This means that the particularized complaint will REPLACE any other complaint and the Court will not consider any

---

[3] That rule provides:

**(a) Claim for Relief.** A pleading that states a claim for relief must contain:
(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

4

old complaint. The particularized pleading must stand or fall of its own accord so Plaintiff should include all facts and all legal claims that she wishes the Court to consider. Plaintiff may not reference statements in the prior complaints.

**FAILURE TO COMPLY WITH THE FOREGOING DIRECTIONS WILL RESULT IN DISMISSAL OF THE ACTION.** *See* Fed. R. Civ. P. 41(b).

(ECF No. 30, at 2–3 (citing ECF No. 11, at 1–3) (alterations in original)).[4]

Puller filed a Second Particularized Complaint. ("Complaint," ECF No. 31.) However, Puller's complaint is neither short nor plain. Instead, the Second Particularized Complaint is a rambling account of Puller's fantastical belief that in September of 2022, while she was detained in the Arlington County Detention Center ("ACDC") her newborn child was raped in front of her by officers, was stolen from her, and that the baby was sold into sex-trafficking.

From Puller's Complaint, the Court surmises that Puller was pregnant and had a child while she was incarcerated in September of 2022. (*Id.* at 1, 3.) Because Puller was incarcerated, the baby was evidently placed in foster care. (*See id.* at 3.) Puller names as defendants Cpl. Coles, Sgt. Smith, and John Doe 1 who work for the Arlington County Sheriff's Office (collectively, "defendants"). (*Id.* at 1.) Puller contends that she and her son were "rape[d] and human traffick[ed] . . . physically with the use of unlawful spy wear" and the ACDC "exploit[ed] them for a multimillion-dollar profit." (*Id.* at 2.) Puller indicates that "she heard her baby . . . saying 'help' in her right ear." (*Id.*) Puller contends that there was a "steel plate on the inside of [the] cell . . . where Puller saw the image of defendants orally sodomizing and raping her baby in his oversized blanket with a whip too." (*Id.*) Puller further describes that she saw:

> Cpl. Coles was on his knees with his legs and boots out and him underneath the blanket orally sodomizing my baby boy JP2022. John Doe 1 had my son['s] head and mouth in his groin area with his mouth wide open and no teeth in his front

---

[4] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the Particularized Complaint.

mouth. Sgt. Smith was whipping Cpl. Coles with a black long whip on Cpl. Coles buttocks area after banging noises would occur on medical floor.

(*Id.* at 3.)

Puller indicates that "she was held hostage in the" ACDC and that she "was raped with chloroform gas [and] she contracted serious STDs was injured by J. Barnett . . . ." (*Id.* at 5.)[5] Puller explains that she feels her son is "deceased or in danger of being human trafficked in CPS (Child Protective Services) foster families and its stranger danger affiliates." (*Id.* at 7.) Puller has further "experienced multiple days and nights with pain and suffering to include rapes with chloroform gas, sodomization, spy wear, seizures, exploitation cell phone and video recording pictures being took and physical assaults, pain and suffering with mental anguish with all these transactions behind this moment uncovered in the entrapment." (*Id.*)

Puller "reported her son JP2022 missing and exploited in the CPS system" and "when [she] went to petition for JP2022 in January 2024 she was told that her parental rights were terminated which was unlawful for the Arlington County Sheriff's Office to sex traffic Ms. Puller and [her] son JP2022 for a large amount of money and then commit a homicide against us with this dilemma . . . ." (*Id.* at 8.)

---

[5] Although completely unrelated to the Defendants, Puller then explains:

A black male fire[d] a gun and threaten[ed] to kill Ms. Puller; Ms. Puller being called a black bitch; a foreign male urinating in a cup and J. Barnett putting Crystal Light in it. Lettuce disguised with a tracking device. Inhumane treatment, no meals, sour milk, and stolen property. Another male stated who's coming next the ATF . . . . Puller also heard that she was to get to the house and blow it up which she discovered a bomb inside her previous Arlington County, VA residence . . . . Also probation and parole stalking and violating her with privacy and spy wear violations to her home, cell phone and vehicle . . . .

(ECF No. 31, at 5–6.) The Complaint continues in this fashion.

6

As for her claims for relief, Puller contends that Defendants violated her First Amendment rights by "imposing deprivations to [her] life due to freedom of speech and expression disfavored by Defendants in the entrapment and sex trafficking (*id.* at 8); her Sixth Amendment rights "for Plaintiff visualizing seeing her baby by JP2022 being orally sodomized and human trafficked by and raping him:" (*id.*) her Eighth Amendment rights for "the rapes and sex trafficking involved and engaging in sexual misconduct while on duty . . . in September 2022;" (*id.* at 9); and her Fourteenth Amendment rights for "denying Puller and her son" due process and "the equal protection of laws." (*Id.*) As relief, Puller asks for damages, removal of Defendants from their jobs, a formal investigation, sanctions, and criminal prosecution of Defendants, protective orders and placement in witness protection, and the reversal of the termination of her parental rights and the return of her child to her. (*Id.* at 10.)

### III.    ANALYSIS

It is both unnecessary and inappropriate to engage in an extended discussion of the lack of merit of Puller's theories for relief. *See Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996) (emphasizing that "abbreviated treatment" is consistent with Congress's vision for the disposition of frivolous or "insubstantial claims" (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989))). Puller's Complaint will be dismissed for failure to state a claim and as legally and factually frivolous.

As a preliminary matter, Puller fails to identify the procedural vehicle that would allow this federal Court to interject itself into any child custody determinations or proceedings of a Virginia state court. Second, to the extent that Puller desires a criminal prosecution of Defendants, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990) (quoting *Linda R. v. Richard V.*,

410 U.S. 614, 619 (1973)); *see Smith v. McCarthy*, 349 F. App'x 851, 859 (4th Cir. 2009) (no right to investigation or prosecution of another).

Morerover, Puller's claims appear to be untimely. Under 28 U.S.C. § 1915(e)(2), the Court must dismiss claims which the relevant statute of limitations clearly bars. *Brown v. Harris*, No. 3:10CV613, 2012 WL 12383, at *1 (E.D. Va. Jan. 3, 2012) (citing *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655–57 (4th Cir. 2006); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995)). Because no explicit statute of limitations for 42 U.S.C. § 1983 actions exists, the courts borrow the personal injury statute of limitations from the relevant state. *Nasim*, 64 F.3d at 955 (citing *Wilson v. Garcia*, 471 U.S. 261, 266–69 (1985)). Virginia applies a two-year statute of limitations to personal injury claims. *See* Va. Code Ann. § 8.01–243(A) (West 2018). Hence, Puller should have filed her complaint within two years from when the underlying claims accrued. "A claim accrues when the plaintiff becomes aware of his or her injury, *United States v. Kubrick*, 444 U.S. 111, 123 (1979), or when he or she 'is put on notice . . . to make reasonable inquiry' as to whether a claim exists." *Almond v. Sisk*, No. 3:08cv138, 2009 WL 2424084, at *4 (E.D. Va. Aug. 6, 2009) (omission in original) (quoting *Nasim*, 64 F.3d at 955). Although Puller mentions that she attempted to petition for custody of her son in January 2024, the crux of the conduct alleged in the Complaint occurred in September of 2022, when Puller's son was taken from her. Thus, her claims accrued no later than September 30, 2022. Puller filed the initial Complaint in this action on July 2, 2025. (*See* ECF No. 1, at 3.)[6] Thus, Puller is barred from bringing any claim that accrued prior to July 2, 2023. Accordingly, Puller's claims that occurred in September of 2022 are barred by the relevant statute of limitations.

---

[6] This is the date she signed her initial Complaint, and the Court considers it the filed date. *Houston v. Lack*, 487 U.S. 266, 276 (1988).

8

Even if any claim was timely, Puller's allegations and claims are so fanciful that they are frivolous. A claim is factually frivolous if it depicts "fantastic or delusional scenarios," *Neitzke v. Williams*, 490 U.S. 319, 328 (1989), or where "the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Such a claim may be dismissed *sua sponte. Denton*, 504 U.S. at 33. Puller's allegations that she and her son were raped, sexually trafficked, and spied on by defendants combined with a host of other wild accusations are factually frivolous because they are wholly incredible. *See id.* Puller's Complaint is also "frivolous" under § 1915(e) because its factual allegations and legal conclusions "lack[] an arguable basis either in law or fact." *Neitzke*, 490 U.S. at 325.

## V.   CONCLUSION

Puller's claims and the action will be DISMISSED as legally and factually frivolous. The Clerk will be DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 9 July 2026
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge

9